UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRACY BERTOLINO, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CIVIL ACTION |
| ) | NO. 22-11139-JGD |
| SEQUIUM ASSET SOLUTIONS, LLC, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF DECISION AND ORDER ON**
**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

April 18, 2023

DEIN, U.S.M.J.

## I. INTRODUCTION

Plaintiff Tracy Bertolino ("Bertolino") claims that a July 16, 2021 letter ("Settlement Letter" or "Letter") she received from the defendant, Sequium Asset Solutions, LLC ("SAS"), proposing to settle a debt that Bertolino owed to SAS's client, violated the Fair Debt Collection Practices Act ("FDCPA") because it failed to inform Bertolino whether interest was accruing on the debt or specify whether SAS's client was waiving statutory interest. By her Class Action Complaint, Bertolino has asserted claims against SAS, on behalf of herself and a putative class of Massachusetts consumers who received similar correspondence from SAS, for violations of Sections 1692e and 1692f of the FDCPA, 15 U.S.C. §§ 1692e and 1692f. The matter is before the court on the "Motion of Sequium Asset Solutions, LLC for Judgment on the Pleadings" (Docket No. 12). By its motion, SAS argues that Bertolino's claims must be dismissed pursuant

Rule 12(c) of the Federal Rules of Civil Procedure because it had no legal obligation to disclose information regarding interest in its Settlement Letter to the plaintiff.[1]  As described below, this court agrees that Bertolino has failed to state plausible claims for relief against SAS under the FDCPA.  Therefore, and for all the reasons that follow, the defendant's motion for judgment on the pleadings is ALLOWED.

## II. STATEMENT OF FACTS

"The legal standard for evaluating a motion for judgment on the pleadings is essentially the same as the standard for evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), except that a Rule 12(c) motion 'implicates the pleadings as a whole.'"  Najas Realty, LLC v. Seekonk Water Dist., 68 F. Supp. 3d 246, 249 (D. Mass. 2014) (quoting Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54-55 (1st Cir. 2006)), aff'd, 821 F.3d 134 (1st Cir. 2016).  "Accordingly, 'the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom.'"  Díaz-Nieves v. United States, 858 F.3d 678, 689 (1st Cir. 2017) (quoting Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008)).  In doing so, the court "may consider 'documents the authenticity of which are not disputed by the parties; … documents central to the plaintiff['s] claim; [and] documents sufficiently referred to in the complaint.'"  Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007)

---

[1] In connection with its motion for judgment on the pleadings, SAS has also filed a "Motion to Supplement the Authority Provided in its Motion for Judgment on the Pleadings" ("Def. Mo. to Suppl.") (Docket No. 21), by which it is seeking to supplement the record with respect to its motion and submit two decisions from the Southern District of New York.  Because SAS is only seeking to supplement its legal argument, its motion to supplement is ALLOWED.  This court has considered the decisions in connection with its analysis of the defendant's motion for judgment on the pleadings.

[2]

(punctuation and second alteration in original) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).  Applying this standard to the instant case, the relevant fact are as follows.[2]

### The Parties

The plaintiff, Bertolino, is an individual who resides in Essex County, Massachusetts. (CAC ¶ 7).  Prior to July 16, 2021, Bertolino incurred financial obligations to Bank of America, N.A. ("Bank of America"), which arose out of consumer transactions that she made for personal, family and/or household purposes.  (Id. ¶¶ 20-23; Ans. ¶ 20).  Following a default on her debt, Bertolino's financial obligations were reduced to judgment.  (See CAC ¶ 25 & Ex. A at Page 2 of 2).[3]  Bank of America subsequently sold the plaintiff's debt to a non-party creditor, Cach, LLC ("CACH").  (CAC ¶ 25).

Defendant SAS is a collection agency with an office address in Marietta, Georgia.  (See id. ¶ 8 & Ex. A at Page 2 of 2).  It works on behalf of creditors to collect and attempt to collect debts incurred by consumers for personal, family and household purposes.  (CAC ¶ 27; Ans. ¶ 27).  SAS uses the mail, telephone and the internet to seek repayment of debts owed to its clients.  (CAC ¶¶ 9, 27; Ans. ¶¶ 9, 27).  It is undisputed that at least "at times," SAS acts as a "debt collector" as defined in the FDCPA.  (CAC ¶ 8; Ans. ¶¶ 8-9, 27).

---

[2] The facts are derived from the plaintiff's Class Action Complaint and Demand for Jury Trial ("CAC") (Docket No. 1), including Exhibit A attached thereto, and the Answer of Defendant Sequium Asset Solutions, LLC ("Ans.") (Docket No. 8).  However, this court has not considered the witness Declarations attached to the defendant's Answer because they do not fall within the scope of the materials that the court may consider in connection with a motion for judgment on the pleadings.

[3] "Page 2 of 2" refers to the CM/ECF number at the top of the cited document.

**The July 16, 2021 Settlement Letter**

CACH and SAS entered into a contract under which SAS agreed to collect Bertolino's debt on behalf of CACH.  (CAC ¶ 26; Ans. ¶ 26).  SAS subsequently sent a Letter to the plaintiff, dated July 16, 2021, in which it offered to resolve the unpaid balance due on Bertolino's debt.  (CAC ¶ 28 & Ex. A at page 2 of 2).  As described below, Bertolino relies upon this Letter, a copy of which is attached to the Class Action Complaint, to support her claims that SAS violated the FDCPA.

The Letter includes a table, entitled "Account Information," in which SAS listed Bertolino's current creditor as CACH, the original creditor as Bank of America, and a "Total Due" of "$170,149.25."  (CAC Ex. A at Page 2 of 2).  The body of the Letter provides in relevant part as follows:

**Settlement Offer on your Judgment**
**Our Client will Forgive 35% of Your Balance**

This notice is being sent to you by a collection agency.  Please be advised that Cach, LLC, the Current Creditor-Debt Purchaser, has purchased the account referenced above.  Our records indicate that the judgment that was awarded on 04/29/2011 remains unresolved.  This is the date on which the balance became due.

We have a very special offer to resolve your unpaid balance with our client.  We are willing to settle your account for 65% of the balance due as stated above.

It is understandable that you may not be able to take advantage of this opportunity at this time.  We are willing to work with you on a payment plan that meets your current financial situation.  You are encouraged to contact our office so we can help assist you in putting this matter behind you.

You can contact us at the phone number listed above or you can communicate with us about your account at www.sequium.com

If you would like to make a payment on your account we have convenient ways to pay....

[4]

(Id.).  Notably, however, neither the Account Information table nor the text of the Letter specifies whether interest is accruing on the balance at the rate prescribed by Massachusetts law.  (See id.).  Nor does the Letter otherwise reference interest on the debt.  (See id.).  By her claims in this action, Bertolino asserts that the absence of any such information rendered SAS's Settlement Letter false, deceptive and/or misleading under Section 1692e of the FDCPA, 15 U.S.C. § 1692e.  (CAC ¶¶ 36, 65-66).  She further asserts that the Letter constituted an unfair or unconscionable means of collecting the outstanding debt under Section 1692f of the statute, 15 U.S.C. § 1692f.  (Id. ¶¶ 70-71).

### Bertolino's Response to the Settlement Letter

The plaintiff allegedly is aware that judgments generally accrue interest.  (Id. ¶ 33).  In Massachusetts, annual interest accrues on judgments in contract actions pursuant to Mass. Gen. Laws ch. 231, § 6C.  (Id. ¶ 34).  Therefore, according to Bertolino, the total amount due on her debt has been increasing since the date when the debt was reduced to judgment on April 29, 2011, as a result of the accumulation of statutory interest.  (Id. ¶ 35).

Bertolino claims that SAS's failure to disclose whether interest was accruing on her debt or whether CACH was waiving its right to collect statutory interest led her to suspect that the Settlement Letter was fraudulent.  (See id. ¶¶ 36-37, 39).  Thus, according to the plaintiff, she was unable to determine whether the Settlement Letter came from "a legitimate creditor, a fraudulent wrongdoer hoping to induce erroneous payment, or for a debt that was already satisfied."  (Id. ¶ 38).  She also alleges that her confusion regarding interest made it impossible for her to evaluate the offer contained in the Letter or her options for addressing the

outstanding debt.  (See id. ¶¶ 46-47, 50-52).  Consequently, Bertolino contends that she was unable to make any payment on the debt.  (Id. ¶ 48).

Additional factual details relevant to this court's analysis are set forth below where appropriate.

### III.  ANALYSIS

#### A.  Standard of Review of Motions for Judgment on the Pleadings

As described above, a motion for judgment on the pleadings is analyzed under substantially the same standard as a motion to dismiss.  Thus, when ruling on a motion for judgment on the pleadings, the court must "view the facts contained in the pleadings in the light most favorable to the party opposing the motion -- here, the plaintiff -- and draw all reasonable inferences in the plaintiff's favor."  Curran, 509 F.3d at 43.  Dismissal is only appropriate if the pleadings, so viewed, fail to support "a plausible entitlement to relief."  Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)).

"The plausibility inquiry necessitates a two-step pavane."  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'"  Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)) (additional citation omitted).  This second step requires the reviewing court to "draw on its judicial experience and common

sense." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009)).  If, after viewing the pleadings in the plaintiff's favor, the allegations "are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Morales-Cruz, 676 F.3d at 224 (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010)).  For the reasons set forth below, this court finds that Bertolino has failed to allege plausible claims against SAS under the FDCPA.

### B. Bertolino's Claims Under the FDCPA

"The FDCPA was enacted in the wake of 'abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors.'" Pollard v. Law Office of Mandy L. Spaulding, 967 F. Supp. 2d 470, 474 (D. Mass. 2013) (quoting 15 U.S.C. § 1692(a)).  "To suppress these practices while also ensuring that 'those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged,' the Act regulates, among other things, all forms of communications with borrowers." Id. (quoting 15 U.S.C. § 1692(e)).  In the instant case, Bertolino claims that SAS's failure to disclose information pertaining to interest on her debt violated §§ 1692e(2)(A) and 1692e(10) of the FDCPA (see CAC ¶ 66), which provide in relevant part as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section: ...
>
> (2) The false representation of --
>
> > (A) the character, amount, or legal status of any debt; ...
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. §§ 1692e(2)(A) and 1692e(10).  She also claims that the defendant's failure to state whether interest was accruing on her debt or whether interest had been waived violated § 1692f of the FDCPA.  (CAC ¶¶ 70-71).  Section 1692f provides in relevant part that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  For purposes of this provision, "'[u]nconscionable' ... means 'shockingly unjust or unfair' or 'affronting the sense of justice, decency, or reasonableness.'" Felberbaum v. Sequium Asset Sols., No. 21-cv-9513 (NSR), 2023 WL 167559, at *5 (S.D.N.Y. Jan. 11, 2023) (quoting Gallego v. Northland Grp. Inc., 814 F.3d 123, 127-28 (2d Cir. 2016)).

When considering whether a particular debt collection notice violates these provisions of the FDCPA, courts "employ the least sophisticated consumer standard[.]" Cortez v. Forster & Garbus, LLP, 999 F.3d 151, 154 (2d Cir. 2021).  See also McDermott v. Marcus, Errico, Emmer & Brooks, P.C., 911 F. Supp. 2d 1, 54 (D. Mass. 2012) (explaining that courts applying the FDCPA "evaluate the proscribed collection activities and communications to the debtor under a 'least sophisticated consumer' standard.").  Such a consumer "could misunderstand a collection letter if it is 'reasonably susceptible to an inaccurate reading.'" Weiss v. Sequium Asset Sols., LLC, No. 21-CV-218(EK)(TAM), 2022 WL 1046260, at *2 (E.D.N.Y. Apr. 7, 2022) (quoting DeSantis v. Computer Credit, Inc., 269 F.3d 159, 161 (2d Cir. 2001)).  Thus, "[t]he 'least sophisticated consumer' is an objective standard." Pollard, 967 F. Supp. 2d at 475 (quoting Easterling v. Collecto, Inc., 692 F.3d 229, 234 (2d Cir. 2012)).  "It protects 'the gullible as well as the shrewd' but 'prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness.'" Id. (quoting Hartman v. Great Seneca Fin. Corp., 569 F.3d 606, 612 (6th Cir. 2009)).  Accordingly, the least sophisticated consumer standard

"presumes the consumer possesses at least 'a basic level of understanding and willingness to read with care.'" Id. (quoting Hartman, 569 F.3d at 612).  Because SAS's failure to address the issue of interest did not render its Settlement Letter reasonably susceptible to an inaccurate reading under this standard, SAS's motion for judgment on the pleadings must be allowed.

### C. Whether SAS Violated the FDCPA

The fundamental issue before the court is "whether a debt collector violates the FDCPA when it fails to state that the interest clock is (or is not) running when offering to settle a debt for a sum certain."  Felberbaum, 2023 WL 167559, at *4.  The parties agree that the First Circuit has not addressed this issue.  (See Def. Mo. at 4; Pl. Opp. Mem. at 4).[4]  However, the Second Circuit Court of Appeals and trial courts within that Circuit have considered the matter directly.  Those courts have held that a debt collection notice containing an offer to settle a debt for a specified amount is not required to disclose whether the account is accruing interest and fees.  See Cortez, 999 F.3d at 155 (ruling that a debt collector is not subject to liability under the FDCPA "'for failing to disclose' in a collection notice whether an account is accruing interest and fees so long as the notice 'clearly states that the holder of the debt will accept payment of the amount set forth in full satisfaction of the debt if payment is made by a specified date.'" (quoting Avila v. Riexinger & Assocs., LLC, 817 F.3d 72, 77 (2d Cir. 2016)); Felberbaum, 2023 WL 167559, at **4-5 (holding that defendants' offer to settle plaintiff's debt for a percentage of the amount shown due and owing in the settlement offer did not violate the FDCPA on the grounds

---

[4] "Def. Mo." refers to the Motion of Sequium Asset Solutions, LLC for Judgment on the Pleadings (Docket No. 12).  "Pl. Opp. Mem." refers to the Plaintiff's Memorandum of Law in Opposition to Defendant's Fed. R. Civ. P. 12(c) Motion for Judgment on the Pleadings (Docket No. 16).

that it failed to inform plaintiff whether or not interest was accruing on the account); Weiss, 2022 WL 1046260, at **1, 3-4 (ruling that SAS's offer to settle plaintiff's debt for sixty percent of the amount shown due and owing did not violate Sections 1692e, 1692f or 1692g of the FDCPA, even though the offer letter "failed to include interest in the total due or state explicitly that statutory interest would be waived."). SAS relies on this line of cases to argue that its motion for judgment on the pleadings should be allowed.[5] (See Def. Mo. at 7; Def. Mo. to Suppl.).

This court agrees with the reasoning of these cases. As the Second Circuit explained in Cortez, collection notices that offer to settle a judgment debt for a sum certain "do not present the risk that a debtor might pay the listed balance only to find herself still owing more. Payment of an amount that the collector indicates will fully satisfy a debt excludes the possibility of further debt to pay." Cortez, 999 F.3d at 155. Because an "offer to extinguish the debt in exchange for a specified payment ... dispels the risk of a collection notice misleading a debtor about the effect paying the specified amount would have on the outstanding debt[,]" the failure to disclose whether interest is accruing will not subject the debt collector to liability under the FDCPA. See id. at 155-56. Such an offer, "when viewed from the perspective of the least sophisticated consumer," can "only reasonably be read one way: as extending an offer to

---

[5] SAS's initial argument in support of its motion is that its failure to state whether interest on Bertolino's debt was accruing, or to state whether any such interest had been waived, could not have been misleading or violated the FDCPA because neither CACH nor SAS was assessing any interest or fees on that debt. (Def. Mo. at 4-6). However, this argument does not support a ruling in the defendant's favor at this stage in the litigation. SAS's assertion that there was never any interest accruing on the debt during the time it was owned by CACH is premised upon evidence set forth in witness Declarations that SAS attached to its Answer. (See id.). As described in Note 2 above, those Declarations do not fall within any of the limited categories of materials that a court may consider on a motion for judgment on the pleadings. At this point in the proceedings, this court must credit the plaintiff's allegations that statutory interest was accumulating on her judgment debt. (See CAC ¶¶ 34-35).

[10]

clear the outstanding debt upon payment of the specified amount(s) by the specified date(s)." Id. at 156.

Nevertheless, Bertolino relies on the Second Circuit's ruling in Avila to challenge SAS's assertion that it had no obligation to disclose whether interest was accruing on her judgment debt. (See Pl. Opp. Mem. at 6). Thus, the plaintiff reasons that under Mass. Gen. Laws ch. 231, § 6C, "[i]t is ... undisputed that Massachusetts money judgments accrue interest." (Id.). Therefore, she maintains that "the debt here was accruing interest by force of law." (Id.). Bertolino further contends that under Avila, "when interest is accruing on a debt, the law requires debt collectors [to] note this in their collection letters." (Id.). Consequently, she concludes that SAS was legally required to include such information in its Settlement Letter. (Id.). Even accepting the plaintiff's assertions regarding the accrual of interest as true, as this court is required to do at this stage in the litigation, Bertolino's reliance on Avila is misplaced. The Second Circuit's decision in that case undermines Bertolino's claims in this action and supports a ruling in favor of the defendant.

In Avila, the Second Circuit held "that the FDCPA requires debt collectors, when they notify consumers of their account balance, to disclose that the balance may increase due to interest and fees." Avila, 817 F.3d at 76. The court determined that such a rule "best achieves the Congressional purpose of full and fair disclosure to consumers" and provides protection to consumers "who may hold the reasonable but mistaken belief that timely payment will satisfy their debts." Id. Significantly, however, the Second Circuit qualified its ruling by holding that

> a debt collector will not be subject to liability under [the FDCPA] for failing to disclose that the consumer's balance may increase due to interest and fees if the collection notice *either* accurately informs the consumer that the amount of the debt stated in the letter will increase over time, *or clearly states that the holder of*

[11]

> *the debt will accept payment of the amount set forth in full satisfaction of the debt if payment is made by a specified date.*

Id. at 77 (emphasis added). In Cortez, the Second Circuit reaffirmed, "*Avila's* holding that a debt collector 'will not be subject to liability ... for failing to disclose' in a collection notice whether an account is accruing interest and fees so long as the notice 'clearly states that the holder of the debt will accept payment of the amount set forth in full satisfaction of the debt if payment is made by a specified date.'" Cortez, 999 F.3d at 155 (quoting Avila, 817 F.3d at 77).

In its Settlement Letter to Bertolino in the instant case, SAS clearly stated that it was "willing to settle [Bertolino's] account for 65% of the balance due" of $170,149.25, and that its offer would "resolve [Bertolino's] unpaid balance with [CACH]." (CAC Ex. A at Page 2 of 2). When viewed from the perspective of the least sophisticated consumer, the Settlement Letter could only reasonably be read as an offer to extinguish Bertolino's debt upon payment of the specified amount. Under the authority described above, the Letter did not violate the FDCPA.

Bertolino attempts to avoid this result by arguing that SAS's Letter does not satisfy the "bright line rule" set forth in Cortez and Avila "that a settlement offer must have an acceptance deadline date to satisfy the exception to the interest disclosure requirement." (Pl. Opp. Mem. at 13). Moreover, according to the plaintiff, the absence of a specific deadline in SAS's Settlement Letter rendered the Letter misleading. (Id. at 14). In particular, she argues that SAS's settlement offer could only remain open as long as CACH continued to hold the debt. (Id.). Therefore, if CACH transferred the judgment debt to another entity, the buyer would have no obligation to honor the offer and the Letter would no longer be accurate. (See id.). Additionally, she argues that the failure to include a deadline rendered the settlement offer misleading because "it is inconceivable that the Defendant would have accepted the exact

[12]

same settlement offer in twenty years, or forever[,]" and that in any event, SAS had no legal obligation to keep the offer open for more than a "reasonable" period of time, which made the offer "illusory."  (Id. at 14-15).  Thus, Bertolino contends that Cortez and its progeny cannot shield SAS from liability here.  Again, this court disagrees.

With respect to Bertolino's assertion that the Settlement Letter failed to adhere to the "bright line rule" that such offers must include a deadline for payment, this court disagrees with the premise that relevant authority from the Second Circuit established any such requirement.  As the court in Weiss stated in response to a similar argument by the plaintiff in that case:

> *Cortez* did not establish a bright line rule that every settlement offer must come with an expiration date.  *Cortez* referenced the expiration date because the central issue there was whether a consumer might be confused about the consequences of paying the settlement amount *after that date*.  [*Cortez*, 999 F.3d] at 156.  That is not an issue in this case, precisely because there was no expiration date in the offer.  Indeed, the open-ended offer from the Defendants was more generous to [the plaintiff] than the defined expiration in *Cortez*, in that it gave [the plaintiff] longer than Mr. Cortez was afforded to accept the settlement offer.

Weiss, 2022 WL 1046260, at *3.  See also Felberbaum, 2023 WL 167559, at *4 (rejecting plaintiff's assertion that the Second Circuit established a bright line rule that settlement offers must include a specific deadline in order to avoid liability under the FDCPA).  In this case, SAS acknowledged that Bertolino "may not be able to take advantage of [the settlement offer] at this time" and offered "to work with [her] on a payment plan that [would meet her] current financial situation."  (CAC Ex. A at Page 2 of 2).  This proposal was far more reasonable than it would have been had SAS set forth a specific deadline for the plaintiff to pay 65% of the outstanding $170,149.25 balance due on her debt.  In any event, there was nothing misleading about the Settlement Letter because it made clear that "payment of the amount indicated in [the Letter] would extinguish the debt."  Cortez, 999 F.3d at 155.

[13]

With respect to Bertolino's argument that SAS's settlement offer was misleading due to the possibility that CACH could sell her judgment debt, or that SAS could rescind the offer after a reasonable period of time or may not be willing to honor the offer in twenty years or more, the FDCPA "does not require that a collection notice anticipate every potential collateral consequence that could arise in connection with the payment or nonpayment of a debt."[6] Id. at 156.  It "merely requires that a collection notice, *by its terms*, not be susceptible of a reasonable but inaccurate interpretation." Id.  Here, SAS's "offer remains open, and Plaintiff is still entitled to pay [65% of $170,149.25] -- a sum certain -- to extinguish all debts associated with [her] account." Felberbaum, 2023 WL 167559, at *5.  Accordingly, Bertolino's claims against SAS under Sections 1692e and 1692f of the FDCPA fail and the defendant is entitled to judgment on the pleadings.  See id. (ruling that SAS's letter to plaintiff offering to settle existing debt for 65% of the "Total Due" but failing to include a deadline by which plaintiff was required to accept the offer or otherwise containing an expiration date did not violate Sections 1692e or 1692f of the FDCPA); Weiss, 2022 WL 1046260, at *4 (ruling that plaintiff's claims under Sections 1692e and 1692f of the FDCPA failed and that defendants were entitled to judgment on the pleadings where SAS sent a letter offering to extinguish plaintiff's outstanding debt for 60% of the "Total Due" but failing to include a deadline by which plaintiff had to accept the offer or otherwise specifying that the offer would expire).

---

[6] The fact that the FDCPA "'does not require that a collection notice anticipate every potential collateral consequence that could arise in connection with the payment or non-payment of a debt' ... is especially true of potential collateral consequences that are so esoteric as to arise only if a debtor decides to wait [twenty] years [or more] to accept a settlement offer." Weiss, 2022 WL 1046260, at *3 (quoting Cortez, 999 F.3d at 156).

## IV. CONCLUSION

For all the reasons detailed above, this court concludes that Bertolino has failed to state plausible claims for relief against SAS under the FDCPA. Therefore, the "Motion of Sequium Asset Solutions, LLC for Judgment on the Pleadings" (Docket No. 12) is ALLOWED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge
